UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

BENJAMIN O.,[1]

        Petitioner,

    v.

KILOLO KIJAKAZI, Acting
Commissioner of Social Security
Administration,[2]

        Respondent.

Case No. 1:21-cv-00403-CWD

**MEMORANDUM DECISION
AND ORDER**

## INTRODUCTION

Pending before the Court is Benjamin O.'s Petition for Review, challenging the

Commissioner's decision that Petitioner is no longer under a disability and the resulting

termination of benefits that occurred on February 21, 2020. (Dkt. 1.) All parties

consented to proceed before a United States Magistrate Judge. 28 U.S.C. § 636. (Dkt. 4.)

The Court has reviewed the Petition for Review, the parties' memoranda, and the

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Kilolo Kijakazi is substituted for Andrew Saul pursuant to Federal Rule of Civil Procedure 25(d). Kijakazi became the Acting Commissioner of Social Security Administration on July 9, 2021.

**MEMORANDUM DECISION AND ORDER - 1**

administrative record (AR), and for the reasons that follow, will remand the decision of the Commissioner for further proceedings.

## BACKGROUND

On May 26, 2006,[3] Petitioner filed applications for a period of disability, disability insurance benefits, and supplemental security income benefits alleging disability as of February 28, 2005. (AR 81.) Petitioner alleged disability due to back and leg pain, which began in 2004 and persisted in spite of surgical intervention, and due to "longstanding attention deficit and personality problems." (AR 81.) The applications were denied, both initially and upon reconsideration, and a hearing was held on September 22, 2007. (AR 81.) Administrative Law Judge (ALJ) Margaret O'Grady issued a decision on December 11, 2008, finding Petitioner was not under a disability from the alleged onset date through the date of the decision. (AR 84 – 85.) The ALJ found that Petitioner retained the residual functional capacity to perform unskilled sedentary jobs such as assembler or packer. (AR 83 – 84.)

On June 10, 2009, Petitioner protectively filed an application for a period of disability and disability insurance benefits under Title II and Part A of Title XVIII of the Social Security Act. (AR 230.) Petitioner alleged disability beginning on February 1, 2005, claiming disability due to bilateral disc herniation at L5, attention deficit hyperactivity disorder (ADHD), and personality disorder not otherwise specified. (AR

---

[3] Petitioner was born in 1980. (AR 28.) At the time of his initial application, Petitioner was twenty-five years of age. (AR 28.)

230, 259.) On September 21, 2009, Petitioner's application was granted upon initial review. (AR 87.) Petitioner was found to have become disabled on December 10, 2008, and became entitled to benefits commencing in June of 2009. (AR 86 – 87; 116.) According to the explanation of determination, Petitioner retained the ability to perform work at the light exertional level, with position changes, but "cl[aimant] would be a voc allowance using rule 202.06."[4] (AR 87.) At the time the determination was made on September 21, 2009, Petitioner was twenty-nine years of age. *See* note 3.

Pursuant to a periodic review, on February 21, 2020, Petitioner was notified by the Social Security Administration that his benefits would stop effective April of 2020. (AR 120.) It was determined that Petitioner was no longer disabled because Petitioner's health had improved, and his conditions of degenerative disc disease, Ehlers-Danlos syndrome, obesity, chronic pain syndrome, anxiety, and ADHD were not severe enough to preclude Petitioner from working. (AR 13, 120 – 21.) The determination was upheld upon reconsideration and after a disability hearing by a State Agency Disability Hearing Officer. (AR 13.)

Petitioner filed a request for a hearing before an ALJ, which was held telephonically before ALJ Stephen Marchioro on May 21, 2021. (AR 13.) The ALJ heard testimony from Petitioner and an impartial vocational expert, and issued a written decision on June 14, 2021. The ALJ found Petitioner's disability ended on February 21,

---

[4] Grid rule 202.06, which applies to a person of advanced age (55 and over) possessing a high school education with an RFC for light work, directs a finding of disabled. Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (effective Oct. 29, 2008 – Apr. 26, 2020).

2020, and that Petitioner had not become disabled again since that date. (AR 30.) On the date of the ALJ's written decision, Petitioner was forty-one years of age.

The Appeals Council denied Petitioner's request for review on August 27, 2021, making the ALJ's decision final. (AR 1 – 6.) Petitioner timely filed this action seeking judicial review of the ALJ's final decision. (Dkt. 1.)[5] The Court has jurisdiction pursuant to 42 U.S.C. § 405(g). The Court is limited to reviewing the Commissioner's decision to discontinue benefits, and to determine only whether: (1) it is based on proper legal standards pursuant to 42 U.S .C. § 405(g); and (2) substantial evidence in the record as a whole supports it. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). The Court may affirm, modify, or reverse the Commissioner's decision, with or without remand to the Commissioner for a rehearing. 42 U.S.C. § 405(g).

## THE ALJ'S DECISION

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled only if his impairment is "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of

---

[5] Petitioner is proceeding without the benefit of legal counsel.

**MEMORANDUM DECISION AND ORDER - 4**

substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

Under Title II of the Social Security Act, determination of whether a person's eligibility has ended for disability benefits involves an eight-step process. 20 C.F.R. §§ 404.1594(f)(1)-(8). This eight-step review process is similar to the five-step sequential evaluation process used to evaluate initial claims, with additional attention concerning whether there has been medical improvement. *Compare* 20 C.F.R. § 404.1520 *with* § 404.1594(f).

The burden to prove disability and continuing entitlement to disability benefits is on the claimant at steps one through seven. 20 C.F.R. § 416.994; *cf. Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The Commissioner must consider all evidence without regard to prior findings and there must be substantial evidence that medical improvement has occurred. 42 U.S.C. §§ 423(f)(1), 1382c(a)(4). The Commissioner views the evidence in a continuing disability review from a neutral perspective, without any initial inference as to the existence of disability being drawn from a prior finding of disability. 42 U.S.C. §§ 423(f)(1), 1382c(a)(4).

These steps, and the ALJ's findings, are summarized as follows. The first step asks whether the claimant is engaging in substantial gainful activity. If the claimant is performing substantial gainful activity and any applicable trial work period has been completed, the claimant is no longer disabled 20 C.F.R. § 404.1594(f)(1). The ALJ found

Petitioner had not engaged in substantial gainful activity, and proceeded to step two. (AR 15.)

The second step asks whether the claimant has an impairment or combination of impairments that meet or equal the severity of listed impairments set forth at 20 C.F.R. pt. 404, subpt. P, app. 1. 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526. The ALJ found that, since February 21, 2020, Petitioner's impairments did not meet or equal the severity of a listed impairment. (AR 15.)

If the impairment does not equal a listed impairment, the third step addresses whether there has been medical improvement in the claimant's condition. 20 C.F.R. § 20 CFR 404.1594(f)(3). Medical improvement is "any decrease in the medical severity of [the] impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on improvement in the symptoms, signs, and/or laboratory findings associated with [the] impairment(s)." 20 C.F.R. § 416.994(b)(1).

The ALJ determined that medical improvement in Petitioner's condition occurred on February 21, 2020, because there had been a decrease in medical severity of the impairments present at the time of the "Comparison Point Decision" (CPD). The CPD is the date of the most recent favorable medical decision – which was September 21, 2009. The ALJ noted that, at the time of the CPD, Petitioner had the following medically determinable impairments: degenerative disc disease and obesity. (AR 15.)

**MEMORANDUM DECISION AND ORDER - 6**

If there has been medical improvement, at step four, a determination is made whether such improvement is related to the claimant's ability to perform work—that is, whether there has been an increase in the individual's residual functional capacity. 20 C.F.R. § 404.1594(f)(4). Here, the ALJ answered this question in the affirmative. (AR 19.) His findings include a determination that, since February 21, 2020, the impairments present at the time of the CPD (September 21, 2009) decreased in medical severity to the point where Petitioner retained the RFC to perform a range of sedentary work, with certain physical and mental limitations. (AR 19.)

Had the ALJ found there had been no medical improvement or that medical improvement was not related to the claimant's ability to work, the evaluation would have proceeded to step five. At step five, consideration is given to whether the case meets any of the special exceptions to medical improvement for determining that disability has ceased. 20 C.F.R. § 404.1594(f)(5). There are two groups of exceptions (20 CFR 404.1594(d) and (e)). If one of the first group exceptions applies, the analysis proceeds to

the next step. If one of the second group exceptions applies, the claimant's disability

ends. If none apply, the claimant's disability continues.[6]

Because the ALJ concluded at step four that there had been medical improvement

related to Petitioner's ability to work, the ALJ proceeded directly to step six. Step six

inquires whether all of the claimant's current impairments in combination are severe—

that is, whether they impose more than a minimal limitation on his physical or mental

ability to perform basic work activities. 20 C.F.R. § 404.1594(f)(6). The ALJ determined

that, since February 21, 2020, Petitioner continued to have a severe impairment or

combination of impairments. (AR 19.) Specifically, the ALJ determined Petitioner's

impairments of Ehlers-Danlos syndrome, degenerative disc disease of the lumbar spine,

obesity, personality disorder, attention deficit hyperactivity disorder, and anxiety were

severe. (AR 20.)

---

[6] The "first group of exceptions to medical improvement," set forth at § 404.1594(d), "provide a way of finding that a person is no longer disabled in those limited situations where, even though there has been no decrease in severity of the impairment(s), evidence shows that the person should no longer be considered disabled or never should have been considered disabled." They are: (1) substantial evidence shows that the claimant is the beneficiary of advances in medical or vocational therapy or technology related to the ability to work; (2) substantial evidence shows that the claimant has undergone vocational therapy related to the ability to work; (3) substantial evidence shows that, based on new or improved diagnostic or evaluative techniques, the claimant's impairment(s) is not as disabling as it was considered to be at the time of the most recent favorable decision; (4) substantial evidence demonstrates that the prior disability decision was in error; or (5) the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 404.1594(d)(1)-(5).

The "second group of exceptions to medical improvement," set forth at § 404.1594(e), may also result in a determination that the claimant is no longer disabled, but the decision may be made without regard to whether the claimant has medically improved or can engage in substantial gainful activity; that is, they may be considered at any point in the process. *See* § 20 C.F.R. § 404.1594(e), (f)(5). These exceptions are: (1) a prior determination or decision was fraudulently obtained; (2) the claimant does not cooperate with the Commissioner; (3) the Commissioner is unable to find the claimant; or (4) the claimant fails to follow prescribed treatment that would be expected to restore the ability to engage in substantial gainful activity. *Id*. § 404.1594(e)(1)-(4).

**MEMORANDUM DECISION AND ORDER - 8**

The ALJ therefore proceeded to assess Petitioner's RFC based on his current impairments before proceeding to steps seven and eight. (AR 21.) 20 C.F.R. § 404.1594(f)(7). The ALJ determined that Petitioner retained the RFC to perform sedentary work with certain postural and mental limitations. (AR 21.)

Step seven asks whether a claimant can perform past relevant work. 20 C.F.R. §§ 404.1594(f)(7). Because Petitioner had no past relevant work, the ALJ proceeded to step eight. (AR 21.)

If the claimant cannot perform past relevant work, a limited burden of production shifts to the Commissioner to prove alternative work exists in the national economy that the claimant can perform given his age, education, work experience, and residual functional capacity. 20 C.F.R. § 404.1594(f)(8). *Cf. Bowen v. Yuckert*, 482 U.S. at 146 n. 5; *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012) (applying the same burden at the initial disability determination). If the claimant cannot perform a significant number of other jobs, he remains disabled despite medical improvement; if, however, he can perform a significant number of other jobs, disability ceases. 20 C.F.R. § 404.1594(f)(8).

Here, the ALJ determined that, considering Petitioner's age, education, work experience and RFC based upon the impairments present since February 21, 2020, Petitioner could perform a significant number of jobs in the national economy, such as document preparer; address clerk; and tube clerk. (AR 28 – 29.) The ALJ therefore concluded Petitioner's disability ended on February 21, 2020, and that he had not become disabled again after that date. (AR 30.)

**MEMORANDUM DECISION AND ORDER - 9**

## STANDARD OF REVIEW

The Court must uphold an ALJ's decision, unless: 1) the decision is based on legal error, or 2) the decision is not supported by substantial evidence. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla, but less than a preponderance of evidence. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

In making its determination, the Court considers the administrative record as a whole, weighing both the evidence that supports and the evidence that does not support the ALJ's conclusion. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). The Court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court considers only the reasoning and actual findings identified by the ALJ and may not affirm for a different reason or based on post hoc rationalizations attempting to infer what the ALJ may have concluded. *Garrison*, 759 F.3d at 1010; *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports Petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). If the ALJ's decision is based on a rational interpretation of conflicting

evidence, the Court must uphold the ALJ's finding. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008). The Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

## ANALYSIS

### 1.    Positions of the Parties

Petitioner challenges the ALJ's findings at step three, and the ALJ's RFC determination prior to steps seven and eight. Petitioner claims there is insufficient evidence of medical improvement, and that the ALJ failed to properly evaluate the medical opinion evidence and Petitioner's subjective symptom testimony, thereby resulting in an erroneous RFC applied at step eight. (AR 25.) Petitioner argues that remand for an award of benefits is the proper remedy. (AR 25.)

In response, Respondent concedes the ALJ's step three findings are erroneous. Respondent explains the ALJ did not conduct an evaluation of the medical evidence concerning Petitioner's symptoms, signs, or laboratory findings associated with his impairments. Accordingly, Respondent contends this error in turn tainted the remaining findings at all later steps, and does not address Petitioner's arguments concerning the ALJ's RFC determination prior to steps seven and eight.

However, Respondent disagrees that remand for an award of benefits is appropriate, instead insisting that the remedy is to remand to the Commissioner for further proceedings to make legally sufficient findings consistent with the applicable

**MEMORANDUM DECISION AND ORDER - 11**

regulations. Resp. Brief at 5. (Dkt. 30.) Respondent argues that the record contains

conflicts in the medical evidence to be considered at step three, which must be resolved

by the Commissioner.

Respondent questions also the underlying determination of disability, pointing out

that Grid Rule 202.06, which applies to individuals of advanced age, was applied as a

basis for determining Petitioner was disabled. Resp. Brief at 8. (Dkt. 30.) Respondent

therefore suggests that, because the prior disability decision was in error, an exception to

medical improvement may apply should the ALJ reach step five. Consequently,

Respondent argues the Agency should be allowed to correct the legal error at step three,

and apply the remaining regulatory framework to the evidence in the record.

In reply, Petitioner challenges Respondent's claim that remand due to legal error is

appropriate with regard to the ALJ's step three findings. Pet. Reply at 2. (Dkt. 31.) He

references the Disability Determination Explanation at the CDR Initial level, where the

reviewer determined that, regardless of the finding at step three, the ALJ must still

proceed to evaluate Petitioner's current RFC because the applicability of the exception at

step five is inconclusive. Pet. Reply at 10. (AR 95.)

Accordingly, Petitioner insists that remand for an award of benefits is proper. He

again asserts that the ALJ's RFC determination based upon Petitioner's current

impairments is the product of legal error and is not supported by substantial evidence.

Pet. Reply at 2 – 5. Petitioner contends that, if the medical opinions of Dr. Mason and

Himes are properly evaluated, and Petitioner's subjective symptom testimony and lay

**MEMORANDUM DECISION AND ORDER - 12**

witness testimony are credited as true, the Commissioner would be required to find Petitioner disabled at step eight.

## 2.      Error at Step Three

Respondent's concession of error at step three is well taken. By failing to conduct the required comparative analysis and without evidence in support, the ALJ's finding that medical improvement occurred is legally insufficient. This error is not harmless because "an ALJ may not move to the evaluation of a claimant's RFC without first finding medical improvement, and the Act does not authorize an ALJ to find medical improvement without making the comparison of prior and current medical evidence. A termination decision is not 'legally proper and supported by substantial evidence when the CPD evidence is absent from the record.'" *Medina v. Colvin*, No. 14-CV-01967-DMR, 2015 WL 5448498, at *12 (N.D. Cal. Aug. 21, 2015) (quoting *Spratt v. Colvin*, No. 13-CV-299 (TDD), 2016 WL 2153933, at *5 (W.D. Okla. May 20, 2014)); *see also Newmiller v. Colvin*, No. EDCV 15-0139-FFM, 2016 WL 3034670, at *5 C.D. Cal. May 27, 2016) ("The error is compounded because the ALJ proceeded with the sequential analysis even though a proper finding of medical improvement is required to continue to [the next step].").

Accordingly, this matter is subject to remand for further development or review consistent with the regulations and findings of medical improvement. *Keyes v. Saul*, No. 19-CV-00345-YGR, 2021 WL 2953232, at *6–7 (N.D. Cal. July 14, 2021). The Court declines to remand for an award of benefits on the basis of error at step three, however,

**MEMORANDUM DECISION AND ORDER - 13**

because it is not clear that the Commissioner would be required to find Petitioner disabled solely due to lack of medical improvement at step three. *See Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1202 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1041 (9th Cir. 2007) (requiring court to find not only that further administrative proceedings would serve no useful purpose, but that ALJ would be required to find the claimant disabled if the evidence were credited as true).

For the Court to remand with instructions to calculate and award benefits, each of the three parts of the credit-as-true rule must be satisfied: (1) the record is fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence is credited as true, the ALJ would be required to find the claimant disabled on remand. *See Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1202 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1041 (9th Cir. 2007).

Here, it is not apparent what evidence may or may not support a finding of medical improvement at step three, and the Court is not permitted to substitute its judgment for that of the ALJ. Additional administrative proceedings will serve a worthwhile purpose, because the ALJ will be required to evaluate the medical evidence concerning Petitioner's symptoms, signs, or laboratory findings associated with his impairments. Without that analysis, the Court cannot make a determination whether any discredited evidence, if credited as true, would require a finding of disabled at step three.

Accordingly, the Court will remand for further proceedings.[7]

**3.      Petitioner's Current RFC**

The Court finds it is not proper for the Court to address the additional arguments Petitioner raises concerning his current RFC. *See, e.g., Medina*, 2015 WL 5448498, at *12 n.6 ("Because the court finds that remand is appropriate in light of the ALJ's failure to consider the prior medical evidence, the court does not reach the arguments raised by Plaintiff"). Nonetheless, the Court makes the following observations, and cautions the Commissioner to reevaluate the record in light of the same.

The ALJ acknowledged that Petitioner's degenerative disc disease and Ehlers-Danlos syndrome[8] can be expected to produce pain, but the ALJ rejected Petitioner's testimony that his pain was as limiting as he alleged. (AR 22.) The ALJ relied upon Petitioner's daily activities to discredit his subjective symptom testimony, and upon the medical evidence of record.

Daily activities, if relied upon to discredit a claimant's subjective symptom testimony, must be considered in context, in light of the record as a whole, and reflect consideration of a claimant's ability to persist throughout an eight-hour workday and a

---

[7] In his motion for summary judgment, which the Court struck as procedurally improper, Petitioner raised the issue that a remand for further proceedings was unconstitutional. (Dkt. 33, 41.) The Court has explained, however, that pursuant to statute, the Court may affirm, modify, or reverse the Commissioner's decision, with or without remand to the Commissioner for a rehearing. 42 U.S.C. § 409(g). Whether to remand for an award of benefits or for further proceedings is within the Court's discretion, and is reviewed for abuse of that discretion. *Harman v. Apfel*, 211 F.2d 1172 (9th Cir. 2000).

[8] Petitioner was not diagnosed with Ehlers-Danlos syndrome at the time of the CPD.

**MEMORANDUM DECISION AND ORDER - 15**

forty-hour work week. The "mere fact" that a claimant has carried on certain daily activities does not detract from Petitioner's sincerity as to his overall disability. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (quoting *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)). The United States Court of Appeals for the Ninth Circuit has warned that "ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014).

Recognizing that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations," the Ninth Circuit has held that, "[o]nly if the level of activity were inconsistent with [a claimant's] claimed limitations would these activities have any bearing on [claimant's] credibility." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citations omitted); *see also Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons..., and is not held to a minimum standard of performance, as [he] would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases." (citations omitted)). "The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and

**MEMORANDUM DECISION AND ORDER - 16**

many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Fair v. Bowen*, 885 F.2d 599, 603 (9th Cir. 1989).

The ALJ must also evaluate a claimant's "ability to work on a sustained basis." 20 C.F.R. § 404.1512(a) (cited in *Reddick v. Chater*, 157 F.3d 715, 724 (9th Cir. 1998)). The sporadic ability to work is not inconsistent with disability. *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995)). Accordingly, an inability to persist due to increased pain and increased difficulty with ambulation or fatigue, as well as excessive absenteeism due to the same, must be considered.

Thus, when evaluating Petitioner's subjective symptom testimony, the ALJ must address whether Petitioner's daily activities transfer to the workplace, and whether Petitioner would be able to sustain the requirements of full-time competitive employment on a consistent basis. In other words, the ALJ must consider whether Petitioner can persist and maintain full-time employment without interruption from pain and fatigue, either on a daily basis or due to excessive absenteeism.

Second, if the ALJ intends to rely upon Petitioner's failure to obtain regular medical treatment for his conditions, the ALJ must account for the nature of Petitioner's condition, and the Petitioner's stated reasons for not seeking medical treatment. *See Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017) (describing treatment regimen for fibromyalgia and explaining that an evaluation of the aggressiveness of a treatment regimen must consider the condition being treated). For instance, if treatment was not

effective, or was discontinued because of medication side effects, the ALJ cannot rely upon the lack of treatment to discredit a claimant's subjective symptom testimony.

Last, when referencing the medical evidence of record, the ALJ must account for all of the recorded observations and consider Petitioner's ability to persist throughout a full workday or work week without experiencing an increase in pain and fatigue, and a corresponding decline in performance, ability, or absenteeism as a result of persistent exertion. For example, if there is medical evidence of record that indicates Petitioner would suffer a decline in physical performance if pressed to complete a full workday and all of the requisite sitting, standing, and walking requirements of a certain exertionary level, that evidence may not be ignored.

## 4.   Judicial Bias

On October 11, 2022, Petitioner filed an Affidavit of Judicial Bias, claiming the Court is biased against pro se litigants based upon remarks made by the undersigned at civic and other activities, and because her spouse is an attorney. (Dkt. 43.) To disqualify a judge from presiding over specific proceedings, a motion for recusal or disqualification of an allegedly biased judge must be timely and must show bias. *See* 28 U.S.C. §§ 144, 455. The party seeking disqualification must file a "sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party." 28 U.S.C. § 144. Such affidavit must "state the facts and the reasons for the belief that bias or prejudice exists" and must be made in good faith. *Id*.

If a Section 144 affidavit is legally sufficient, a judge is obligated to reassign the

**MEMORANDUM DECISION AND ORDER - 18**

motion to another judge. *Toth v. Trans World Airlines, Inc.*, 862 F.2d 1381, 1388 (9th Cir. 1988). An affidavit lacks a sufficient legal basis where "the alleged bias or prejudice did not arise from an extrajudicial source." *Id*. at 1387.

Here, Petitioner has filed an affidavit accusing the Court of bias, which the Court construes as a motion for recusal. The affidavit identifies the alleged biases as: "ingratiate[ing] herself to the legal community rather than focusing on specific duties as a magistrate judge" because of a stated policy encouraging young lawyers of less than seven years to conduct oral argument; being married to an attorney; "playing political games seeking to get in good graces with the legal community" based upon a statement in a recorded interview;[9] and, receipt of the Distinguished Jurist Award on July 22, 2022.[10]

In *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813 (1986), the United States Supreme Court noted that allegations of bias will rise to the level of a due process violation only in the most extreme instances. *Id*. at 821. Petitioner's arguments here fall well below that level. In *Aetna*, the record presented more than the plaintiffs' mere allegations of bias and prejudice – the plaintiff presented evidence of a direct conflict of interest. That is

---

[9] The statement praised the "dedication by everybody (U.S. attorneys, courtroom deputies, docketing clerks, court security officers, federal defenders)" in making the judicial system work, and appeared in the July 1, 2022, issue of the Advocate, published by the Idaho State Bar. https://isb.idaho.gov/blog/an-interview-with-hon-candy-w-dale-on-retirement-and-recall/ (last visited 12/08/2022).

[10] The undersigned received the Distinguished Jurist Award at the Idaho State Bar's annual meeting in Twin Falls, Idaho, on July 20, 2022. The award recognizes excellence, integrity, and independence by a member of the judiciary. https://www.ca9.uscourts.gov/circuit-executive/judge-candy-w-dale-receives-idaho-state-bar-distinguished-jurist-award/ (last visited 12/08/2022). The award is given each year to a member of the state or federal judiciary. https://isb.idaho.gov/about-us/awards/ (last visited 12/08/2022).

**MEMORANDUM DECISION AND ORDER - 19**

certainly not the case here. Petitioner has not demonstrated that the undersigned has any personal animosity or bias against him or against pro se litigants in general.[11] Furthermore, there is no evidence that the undersigned has a conflict of interest or evidence that would tend to show that the undersigned has acted partially.

Accordingly, the Court rejects the allegations contained in the affidavit as a basis for recusal in this case. For the foregoing reasons, the Court concludes that Petitioner has failed to show conduct sufficient to raise a question about the Court's ability to impartially preside over Petitioner's case. For these reasons, the motion for recusal will be denied.

---

[11] In fact, the undersigned was appointed as the Federal Court Representative to the Idaho Pro Bono Commission in 2008, and worked closely to promote pro bono work on behalf of indigent litigants statewide for many years. https://isb.idaho.gov/blog/hon-candy-w-dale/?utm_source=rss&utm_medium=rss&utm_campaign=hon-candy-w-dale (last visited 12/08/2022).

**MEMORANDUM DECISION AND ORDER - 20**

**ORDER**

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) The Petition for Review (Dkt. 1) is **GRANTED**.

2) This action shall be **REMANDED** to the Commissioner for further proceedings consistent with this opinion.

3) This Remand shall be considered a "sentence four remand," consistent with 42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).

**IT IS FURTHER ORDERED** that Petitioner's request that the undersigned Magistrate Judge recuse herself (Dkt. 43) is **DENIED**.

DATED: December 8, 2022

Honorable Candy W. Dale
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 21**